UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
LUC A. BIJOUX and JUAN RODRIGUEZ,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,

            - against -

AMERIGROUP NEW YORK, LLC,

                Defendant.
----------------------------------------------------------- x

**ORDER ADOPTING REPORT AND RECOMMENDATION**

No. 14-CV-3891 (RJD) (VVP)

RAYMOND J. DEARIE, District Judge:

      Plaintiffs Luc A. Bijoux and Juan Rodriguez allege that their former employer, defendant Amerigroup New York, LLC ("Amerigroup"), maintained a *de facto* corporate policy of limiting the number of overtime hours that its marketing representatives were paid in violation of Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). Seeking to represent a class of similarly-situated individuals, plaintiffs moved to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b) and to issue a court-authorized notice of the action to potential opt-in plaintiffs. I referred the motion to Magistrate Judge Viktor V. Pohorelsky. On July 23, 2015, Judge Pohorelsky recommended that plaintiffs' motion be granted. Amerigroup filed a timely objection. For the reasons set forth below, Amerigroup's objection to the report and recommendation is overruled and, accordingly, plaintiffs' motion is granted.

FACTUAL BACKGROUND

      The Court presumes familiarity with the facts and procedural history of this action, which have been set forth comprehensively in Judge Pohorelsky's report and recommendation, and are adopted herein.

DISCUSSION

A. Standard of Review

The parties dispute the standard of review. 28 U.S.C. § 636(b)(1)(A) provides that "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court," except for certain enumerated dispositive motions. See also Fed. R. Civ. P. 72(b) (referring to dispositive motions as those "dispositive of a claim or defense of a party"). Although a magistrate may hear dispositive pretrial motions, he may only submit proposed findings of fact and recommendations for disposition of the matter. A district court must make *de novo* determinations as to those matters to which a party has objected, and "may accept, reject, or modify" the recommendation. 28 U.S.C. § 636(b)(1)(C). A magistrate, however, may issue orders regarding nondispositive pretrial matters. The district court reviews such orders under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A).

While Magistrate Judge Pohorelsky styled his decision as a report and recommendation, he "had the authority to grant conditional certification in the first instance because such a determination is a non-dispositive matter." McEarchen v. Urban Outfitters, Inc., No. 13-CV-03569 (FB) (JO), 2014 WL 4701164, at *1 n.1 (E.D.N.Y. Sept. 23, 2014); see also Lazo v. Queens Health Food Emporium, Inc., No. 11-CV-5848 (NGG) (RER), 2012 WL 2357564, at *2 (E.D.N.Y. June 20, 2012) ("Motions for conditional certification of collective actions are nondispositive pretrial matters[.]"). Accordingly, Magistrate Judge Pohorelsky's decision must be reviewed under the "clearly erroneous" standard. "An order is 'clearly erroneous' only if a reviewing court, considering the entirety of the evidence, 'is left with the definite and firm conviction that a mistake has been committed'; an order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" Summa v. Hofstra Univ.,

715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010) (quoting E.E.O.C. v. First Wireless Group, Inc., 225 F.R.D. 404, 405 (E.D.N.Y. 2004)). This standard is "highly deferential," "imposes a heavy burden on the objecting party," and "only permits reversal where the magistrate judge abused his discretion." Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002). New arguments raised in objections to a magistrate judge's report that could have been raised previously are generally not considered. See Diaz v. Portfolio Recovery Associates, LLC, No. 10-CV-3920 (MKB) (CLP), 2012 WL 1882976, at *2 (E.D.N.Y. May 24, 2012); Zhao v. State Univ. of New York, No. 04-CV-0210 (KAM) (RML), 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011).

B. Conditional Certification

"The FLSA permits employees to create a collective by opting-in to a backpay claim brought by a similarly situated employee." Glatt v. Fox Searchlight Pictures, Inc., 791 F.3d 376, 387 (2d Cir. 2015) (citing 29 U.S.C. § 216(b)). Courts generally follow a two-step process when deciding whether to certify an opt-in collective action under § 216(b). See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). "A court first determines whether class members are 'similarly situated,' based on pleadings and affidavits." Kalloo v. Unlimited Mech. Co. of NY, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012) (citation omitted); see also Myers, 624 F.3d at 555. "If the plaintiffs meet the minimal burden of showing that the similarly situated requirement is met, a court conditionally certifies the class as a collective action." Kalloo, 908 F. Supp. 2d at 346. Potential class members are then notified and provided with the opportunity to opt into the action. At the second step, after discovery, the court will determine whether the plaintiffs who opted-in are indeed similarly situated to the named plaintiff; if they are not, the collective action may be decertified. See Myers, 624 F.3d at 555.

Plaintiffs satisfy the similarly situated requirement by making "a modest factual showing that they and others together were victims of a common policy or plan that violated the law." Glatt, 791 F.3d at 387 (citing Myers, 624 F.3d at 555). While a plaintiff's "modest factual showing cannot be satisfied simply by unsupported assertions," Myers, 624 F.3d at 555, it is unnecessary for a court to "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," Ahmed v. T.J. Maxx Corp., No. 10-CV-3609 (ADS) (AYS), 2015 WL 2189959, at *3 (E.D.N.Y. May 11, 2015) (citation omitted). "At this conditional certification stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that the law has been violated." Kalloo, 908 F. Supp. 2d at 346 (citation and internal quotations omitted); see also Levy v. Verizon Info. Servs. Inc., No. 06-CV-1583 (NG) (SMG), 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007) (same).

Plaintiffs move for conditional certification based on the claim that they and other potential plaintiffs are similarly situated since they all are (or have been) Amerigroup marketing representatives subject to an unlawful *de facto* policy of non-compensation for all overtime work. The core of plaintiffs' claim is that Amerigroup imposed unreasonable productivity goals that could not be met within a 40-hour workweek, and Amerigroup's marketing representatives were forced to either work overtime or risk discipline or termination. Magistrate Judge Pohorelsky determined that plaintiffs have made a sufficient showing that they and other Amerigroup marketing representatives were victims of this illegal overtime plan or policy. Amerigroup objects to that determination, and argues that plaintiffs have not made a modest factual showing of an *unlawful* common policy or practice.

It is unlawful for an employer "to suffer or permit" its employees to work in excess of forty hours per workweek without overtime compensation. See 29 U.S.C. §§ 203(g), 207(a)(1). "[T]he existence of a formal policy that is facially unlawful is not a prerequisite for conditional certification." Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012). A *de facto* policy "resulting in a pattern or practice of FLSA violations" is also unlawful. Id.; see also Amador v. Morgan Stanley & Co. LLC, No. 11-CV-4326 (RJS), 2013 WL 494020, at *6 (S.D.N.Y. Feb. 7, 2013). Courts routinely find illegal common overtime policy or practice in cases alleging "dual-edged policies" of "strictly limiting the number of overtime hours that could be accrued while simultaneously encouraging [plaintiffs] to work overtime by requiring them to meet strict sales quotas." Winfield , 843 F. Supp. 2d at 403-04; see also Amador, 2013 WL 494020, at *6 (finding that plaintiffs' allegations of a "*de facto* policy . . . of requiring overtime work without attendant compensation" was "sufficient at the conditional certification stage"); Levy, 2007 WL 1747104, at *2, 4 (granting conditional certification where a defendant "exerted significant pressure on its sales representatives to meet or exceed strict sales quotas," resulting in employees "routinely work[ing] in excess of forty hours a week" for which they were not paid overtime). Magistrate Judge Pohorelsky found such an illegal common overtime practice has been alleged here. Based on plaintiffs' declarations, he concluded that plaintiffs have made a modest factual showing that as a result of Amerigroup's onerous productivity goals, they regularly performed work in excess of 40 hours per week, and that their managers knew that they were working in excess of 40 hours per week without being paid overtime. That conclusion is neither clearly erroneous nor contrary to law.

Amerigroup argues that there is nothing *unlawful* about a company imposing productivity goals that cannot be met within a 40-hour workweek unless the employer also has a policy of

5

discouraging or limiting employees' overtime hours that could be recorded. This case, Amerigroup contends, is different from those in which conditional certification has been granted because plaintiffs have failed to show a policy discouraging or limiting overtime. But while Amador and Winfield may emphasize the fact that the employers there discouraged or limited overtime, lawfulness of a policy "does not turn on whether the employee agreed to work overtime voluntarily or under duress." Chao v. Gotham Registry, Inc., 514 F.3d 280, 290 (2d Cir. 2008). "An employer who has knowledge that an employee is working . . . 'cannot stand idly by and allow an employee to perform overtime work without proper compensation.'" Id. at 288 (quoting Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981)). Accordingly, the "reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." Id. at 289-290 (quoting Reich v. Dep't of Conservation & Natural Res., State of Ala., 28 F.3d 1076, 1082 (11th Cir. 1994)). The plaintiffs here have established that Amerigroup had reason to believe that its marketing representatives were working in excess of 40 hours per week and yet permitted them to do so. Marketing representatives (1) were required to report to their supervisors after completing home visits, and those check-ins regularly occurred after plaintiffs had gone off-the-clock; (2) were told at training that they must answer telephone calls from enrollees at any time of day; and (3) recorded much of their unpaid time on sign-in sheets, home visit logs, enrollee applications, and other paperwork, and those forms were submitted to Amerigroup.[1] Additionally, plaintiffs claim that at least one manager was fired to trying to pay marketing representatives overtime pay. Crediting these allegations, Judge

---

[1] Amerigroup has an official policy entitling marketing representatives to overtime pay, but while the complaint says Amerigroup forbade the logging of overtime, plaintiffs' declarations do not state that marketing representatives were prohibited from doing so. Although plaintiffs need only establish that Amerigroup knowingly permitted them to work overtime hours without compensation, at a later stage plaintiffs will need to offer some explanation for why they were not recording all their overtime hours.

6

Pohorelsky was not in error in concluding that plaintiffs have made the requisite modest factual showing that they were victims of a common unlawful practice. The report and recommendation is legally correct and is therefore adopted.[2]

C. <u>Notice</u>

The class to be noticed consists of approximately 275 marketing representatives in Nassau, Kings, Suffolk, Queens, Bronx, New York, and Richmond Counties. Amerigroup argues that even if this case is appropriate for conditional certification, plaintiffs have failed to show that the alleged unlawful practices occurred statewide. Therefore, Amerigroup argues, notice should be limited to employees at the customer service center in Queens at which the named plaintiffs worked.[3] I do not agree.

"Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan." <u>Rosario v. Valentine Ave. Disc. Store, Co.</u>, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) (collecting cases); <u>see also</u> <u>Karic v. Major Auto. Companies, Inc.</u>, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (plaintiffs need not submit declarations as to every location in order to meet the lenient certification standard); <u>Garcia v. Pancho Villa's of Huntington Vill., Inc.</u>, 678 F. Supp. 2d 89, 93 (E.D.N.Y. 2010) (conditionally certifying a collective action at three locations even though all named plaintiffs worked at a single location because of common ownership). The plaintiffs here have made a showing that Amerigroup's policies resulted in widespread FLSA violations.

---

[2] Even if Amerigroup was right that its objections are governed by 28 U.S.C. § 636(b)(1)(C), it would make no difference. The Court has conducted a *de novo* review of the record and has concluded that plaintiffs have made the necessary "modest factual showing" required to conditionally certify this action.

[3] At best this argument was alluded to in Amerigroup's papers before the magistrate judge. While this objection is not entitled to review because it was not adequately raised, the Court will "conduct a discretionary review, this time using a *de novo* standard as a matter of necessity, since the Magistrate has not had an opportunity to pass on the argument." <u>Tatta v. Wright</u>, 616 F. Supp. 2d 308, 313 (N.D.N.Y. 2007).

Collectively, the named plaintiffs and ten opt-in plaintiffs worked in Nassau, Kings, and Queens Counties for at least five different supervisors. They have provided declarations indicating that they were subject to similar practices and expressing their belief that their experiences were typical of those of other marketing representatives. Their declarations tie their individual experiences and the practices of their supervisors to "an overarching policy by the defendant of minimizing the accrual of overtime." Winfield, 843 F. Supp. 2d at 409.

The cases cited by Amerigroup are easily distinguishable. In Anjum v. J.C. Penney Co., No. 13-CV-460 (RJD) (RER), 2015 WL 3603973, at *8 (E.D.N.Y. June 5, 2015), this Court found that plaintiffs' statements from employees at a single store were insufficient to demonstrate that sales associates at all J.C. Penney stores in New York (approximately 3,500 associates) were victims of a common unlawful practice. Here, on the other hand, the potential class is considerably smaller, there are plaintiffs from multiple locations in New York, and there are more declarants testifying to the unlawful practices. Likewise, the other cases cited Amerigroup were similarly plagued by large class sizes and lack of proof that practices extended beyond a single location. See Rudd v. T.L. Cannon Corp., No. 10-CV-0591 (TJM) (DEP), 2011 WL 831446, at *10 (N.D.N.Y. Jan. 4, 2011) (plaintiffs did not deduce "evidence . . . applicable to all of [Applebee's] locations"); Burkhart-Deal v. Citifinancial, Inc., No. 07-1747, 2010 WL 457127, at *5 (W.D. Pa. Feb. 4, 2010) (plaintiff's handful of affidavits did not show that she was "similarly situated to all [employees] in all of defendant's approximately 2,200 branch offices nationwide"); Hens v. ClientLogic Operating Corp., No. 05-CV-381 (WMS), 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26, 2006) (declining to certify a nationwide collective action that "include[d] a time frame in which [the defendant] did not own or operate some of [the] facilities").

In sum, plaintiff have set forth the requisite "modest factual showing" demonstrating a common policy or plan of denying overtime compensation extending to all New York locations. Plaintiffs are permitted to send proposed notice, consent to join form, and reminder notice approved by Magistrate Judge Pohorelsky. If discovery later shows that only employees who worked at *particular* locations are similarly situated to plaintiffs, the Court may, at that time, amend or decertify the collective action. See Rosario, 828 F. Supp. 2d at 517 (citation omitted).

For the reasons stated above, Magistrate Judge Pohorelsky's report and recommendation is adopted in its entirety, and plaintiffs' motion for conditional certification and court-certified notice is granted.

SO ORDERED.

Dated: Brooklyn, New York
      September 15, 2015

                                              /s/ Judge Raymond J. Dearie

                                              RAYMOND J. DEARIE
                                              United States District Judge